UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MICHAEL SCOTT PIETILA,

                Plaintiff,

v.                               Case No. 17-cv-1616-WED-PP

CO SONNTAG, *et al.*,

                Defendants.

**DECISION AND ORDER GRANTING THE PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYMENT OF THE FILING FEE (DKT. NO. 2), SCREENING AND DISMISSING THE COMPLAINT (DKT. NO. 1), AND DENYING MOTION TO APPOINT COUNSEL AS MOOT (DKT. NO. 11)**

This case currently is assigned to Magistrate Judge William E. Duffin. Although the plaintiff has consented to Judge Duffin hearing and deciding the case, the defendants have not yet had the opportunity to decide whether to consent, because until now, the court had not screened the complaint and decided whether it should be served on the defendants. Because *both* parties have not yet consented to the magistrate judge hearing the case, the district court judge will screen the complaint.

### I.    THE PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYMENT OF THE FILING FEE

The Prison Litigation Reform Act ("PLRA") applies to this case because the plaintiff was incarcerated when he filed the complaint. 28 U.S.C. §1915. The PLRA allows an incarcerated plaintiff to proceed with a case in federal court without pre-paying the full civil case filing fee, as long as he pays an

1

initial partial filing fee. 28 U.S.C. §1915(b). Once the plaintiff pays the initial partial filing fee, he can pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On December 1, 2017, Judge Duffin assessed an initial partial filing fee of $0.11. Dkt. No. 9. The plaintiff responded by sending the court a letter, explaining that he cannot pay this amount because the Department of Corrections takes all of his money to pay for court ordered restitution. Dkt. No. 14. He states that he has not made any canteen purchases or otherwise spent his money. Id.

Section 1915(b)(4) states that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee." "Section 1915(b)(4) comes into play only when 'the prisoner has no assets and no means by which to pay the initial partial filing fee.'" Lindell v. McCaughtry, No. 01-C-209-C, 2004 WL 225074, at *1 (W.D. Wis. Jan. 23, 2004). "A prisoner with periodic income has 'means' even when he lacks 'assets.'" Id.

The court has reviewed the plaintiff's trust fund activity statement. Dkt. No. 8. Although he has average monthly deposits of $0.46, the plaintiff does not have access to this money, because the entire amount is automatically withdrawn each month to pay for restitution, medical co-pay and legal loans. See id. The court concludes that the plaintiff has neither the assets nor the

means to pay the initial partial filing fee. The court will waive the initial partial filing fee and will allow the plaintiff to proceed without prepaying it.

## II. SCREENING OF THE PLAINTIFF'S COMPLAINT

### A. Standard for Screening Complaints

The PLRA requires federal courts to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court may dismiss a case, or part of it, if the claims alleged are "frivolous or malicious," fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915(e)(2)(B).

To state a claim under the federal notice pleading system, the plaintiff must provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). The complaint need not plead specific facts, and need only provide "fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). "Labels and conclusions" or a "formulaic recitation of the elements of a cause of action" will not do. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555).

The factual content of the complaint must allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Allegations must "raise a right to relief above the speculative level."

3

Twombly, 550 U.S. at 555. Factual allegations, when accepted as true, must state a claim that is "plausible on its face." Iqbal, 556 U.S. at 678.

Federal courts follow the two-step analysis in Twombly to determine whether a complaint states a claim. Id. at 679. First, the court determines whether the plaintiff's legal conclusions are supported by factual allegations. Id. Legal conclusions not supported by facts "are not entitled to the assumption of truth." Id. Second, the court determines whether the well-pleaded factual allegations "plausibly give rise to an entitlement to relief." Id. The court gives *pro se* allegations, "however inartfully pleaded," a liberal construction. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

    B.    Facts Alleged in the Complaint

The plaintiff is incarcerated at the Waupun Correctional Institution ("WCI"). Dkt. No. 1. The defendants are Correctional Officer Sonntag and Inmate Complaint Examiner (ICE) Tanya Moon Id.

On November 3, 2017, the plaintiff was in North Cell hall in "Transition/Program Segregation." Id. at 2. Inmate Darren Gruenberg "spent the entire recreation period calling [the plaintiff] retarded, threating [him], calling [him] a coward because [he] didn't want to fight and ma[king] fun of [him] because [his] mother is dead." Id. at 2-3. Sonntag, who was the supervising correctional officer, "questioned" Gruenberg about his obnoxious behavior. Id. at 3. Sonntag allowed inmate Gruenberg to return to his cell. Id.

4

A little while later, the inmates were released from the recreation period. Id. The plaintiff was headed to "B-tier" when inmate Gruenberg pulled the plaintiff into his cell and assaulted him. Id. The plaintiff had scratches on his neck, as well as injuries on his ribs and nose. Id. The plaintiff asserts that "this"—it is not clear whether he means Gruenberg's actions, or Sonntag's—was a "conspiratorial retaliatory action from the numerous PREA complaints"[1] the plaintiff had been making. Id. He opines that Gruenberg "was put up to this" by an unknown employee, for several reasons. First, the plaintiff explains that he and inmate Gruenberg had "never had bad words with each other," and had known each other since 2005. He also indicates that Gruenberg had been helping him file three other lawsuits. Id. at 3-4. He alleges that the night before the incident, Gruenberg started "acting out of character." Id. at 4. The plaintiff did not make note of the behavior until after the assault. Id. The plaintiff also notes that another officer was "joking" with Sonntag and "pretending to scream at him . . . so they were aware." Id.

Although it is not entirely clear, it appears that the plaintiff may have been placed in Temporary Lock Up (TLU) after the incident with inmate Gruenberg. Id. The plaintiff states, "I was told they would keep it 'in house' because as they TLU'd me I was worried about a bail jumping charge for a pending case." Id. He says that, astoundingly, he was released from TLU thirty-four hours later, which "led [him] to believe that [he was] in imminent danger."

---

[1] Prison Rape Elimination Act.

Id. The plaintiff states that Moon "found a way to deny [him] [] exhaustion of [] remedies by confusing [him] with her ICE return memo." Id.

The plaintiff asks for an immediate transfer to a different institution, and for money damages. Id. at 5.

C. Legal Analysis of Alleged Facts

To state a claim under 42 U.S.C. §1983, the plaintiff must allege that: 1) he was deprived of a right secured by the Constitution or laws of the United States; and 2) the deprivation was visited upon him by a person or persons acting under color of state law. Buchanan-Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citing Kramer v. Vill. of N. Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004)).

1. *ICE Examiner Moon*

To be liable under §1983, a defendant must have been personally involved in the constitutional deprivation. Gentry v. Duckworth, 65 F.3d 555, 561 (7th Cir. 1995). "An official satisfies the personal responsibility requirement of section 1983 . . . if the conduct causing the constitutional deprivation occurs at [his] direction or with [his] knowledge and consent." Id. (quoting Crowder v. Lash, 687 F.2d 996, 1005 (7th Cir. 1982)). He "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." Id. (quoting Jones v. City of Chicago, 856 F.2d 985, 992 (7th Cir. 1988)).

A complaint examiner is not liable under §1983 for simply dismissing an inmate's complaint. Burks v. Rasmisch, 555 F.3d 592, 595-96 (7th Cir. 2009). It is part of a complaint examiner's duty to review inmate complaints and to

6

dismiss untimely or unfounded complaints. Id. at 595. To be liable under §1983, the complaint examiner must refuse to do her job, or deprive a prisoner of the protection provided by the grievance process. Id. For example, a complaint examiner might be liable under §1983 if she refused to review an inmate's complaint, or "routinely sen[t] grievances to the shredder without reading them." Id.

That is not the case with regard to defendant Moon. The plaintiff alleges that Moon's "ICE return memo" was "confusing;" he implies that she deliberately made the memo confusing, so that he could not exhaust his administrative remedies. Moon did her job—she reviewed the plaintiff's complaint, and issued a "return memo." The fact that the plaintiff did not understand that memo, and thus perhaps did not exhaust his administrative remedies, does not make Moon liable for the alleged retaliation by Sonntag. Because the plaintiff has not alleged sufficient facts to state a §1983 claim against Moon, the court will dismiss Moon as a defendant.

    2.    *CO Sonntag*

        *a.*    First Amendment Retaliation

To state a claim for retaliation, the plaintiff must allege that: (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was "at least a motivating factor" in the defendants' decision to take the retaliatory action. Bridges v. Gilbert, 557 F.3d 541, 553 (7th Cir. 2009).

7

The plaintiff states that an "unknown employee" retaliated against him by telling inmate Gruenberg to attack him for the numerous PREA complaints he had been filing. Dkt. No. 1 at 3. The plaintiff does not identify the "unknown employee" as a defendant, nor does he list any other John Doe defendants. The court will not allow the plaintiff to proceed on a First Amendment retaliation claim, because he has not identified anyone who retaliated against him.

   b.  Eighth Amendment Failure to Protect

The Eighth Amendment's Cruel and Unusual Punishment Clause requires prison staff to "take reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832, (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526–27 (1984)). To state a failure to protect claim, a plaintiff must allege that (1) "he is incarcerated under conditions posing a substantial risk of serious harm," and (2) defendants acted with "deliberate indifference" to that risk. Id. at 834. A failure to protect claim requires particularized harm that is "almost certain" or "very likely" to occur. See Wilson v. Ryker, 451 F. App'x 588, 589 (7th Cir. 2011). "A generalized risk of violence is not enough, for prisons are inherently dangerous places." Id.

The plaintiff states that Sonntag failed to protect him from Gruenberg's assault, because although Sonntag had questioned inmate Gruenberg about Gruenberg's obnoxious behavior (yelling at the plaintiff and making fun of him) during recreation period, Sonntag nonetheless allowed Gruenberg to return to his cell. This allegation is not sufficient to state a claim for failure to protect. The plaintiff himself states that he "made no note" of Gruenberg's strange

behavior until after Gruenberg had assaulted him. He states that he and Gruenberg had been working together to file his three other complaints and that they "never had any bad words with each other." The plaintiff indicates that he was surprised by Gruenberg's attack. There is no indication that the plaintiff told Sonntag that he was worried about, or felt threatened by, Gruenberg—probably because, at the time, he wasn't worried, and didn't feel threatened. Sonntag may have noticed Gruenberg's obnoxious behavior and questioned him about it on the day of the assault, but that does not demonstrate that Sonntag knew or had reason to know that Gruenberg posed a physical threat to the plaintiff. Even accepting all of the plaintiff's allegations as true, it appears to the court that everyone—including the plaintiff *and* Sonntag—was surprised by Gruenberg's attack. Sonntag could not protect the plaintiff from a threat that Sonntag (and even the plaintiff) did not know existed.

Because the plaintiff has not alleged sufficient facts to demonstrate that Sonntag failed to intervene, the court will dismiss Sonntag.

**IV. CONCLUSION**

The plaintiff has not stated sufficient facts to prove any constitutional claims against Sonntag or Moon, and the court must dismiss the case. Because the court is dismissing the case, it will deny the plaintiff's motion to appoint counsel as moot.

The court **GRANTS** the plaintiff's motion for leave to proceed without prepayment of the filing fee. Dkt. No. 2. The court **ORDERS** the agency having

9

custody of the plaintiff to collect from the plaintiff's prison trust account the **$350.00** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forward payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency shall clearly identify the payments by the case name and number. The court will send a copy of this order to the officer in charge of the agency where the plaintiff is confined. If the plaintiff is transferred to another institution--county, state or federal--the transferring institution shall forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court **ORDERS** that this case is **DISMISSED** under 28 U.S.C. §§1915(e)(2)(B) and 1915A(b)(1) for failure to state a claim. The clerk will enter judgment accordingly.

The court **ORDERS** that the clerk document that this inmate has incurred a "strike" under 28 U.S.C. §1915(g).

The court **DENIES** the plaintiff's motion for appointment of counsel as moot. Dkt. No. 11.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30** days of the entry of judgment. See Fed. R. of App. P. 3, 4. This court may extend this deadline if a party timely

requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. See Fed. R. App. P. 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). A party must file any motion under Federal Rule of Civil Procedure 59(e) within **28** days of the entry of judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2). A party must file any motion under Federal Rule of Civil Procedure 60(b) within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2).

The court advises parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 5th day of March, 2018.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**United States District Judge**